# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**ALAN F.,**[1]

        Plaintiff,

   v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

        Defendant.

Case No. 6:19-CV-1466-IM

**OPINION AND ORDER**

Jeffrey H. Baird, Dellert Baird Law, PLLC, 6525 California Ave. SW #101, Seattle, WA 98136.
Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Sarah Moum, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Attorneys for Defendant.

**IMMERGUT, Judge**

      Plaintiff, Alan F., seeks review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title

---

     [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

II of the Social Security Act. For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff protectively filed an application for disability insurance benefits (DIB) on August 27, 2015, alleging disability beginning on April 1, 2015. AR 209–10. Plaintiff was born April 7, 1972, and he was 42 years old as of the alleged disability onset date for DIB. AR 31. He alleged disability due to herniated disc back pain, high blood pressure, hearing loss in both ears, poor sleep, fatigue, arthritis, numbness in arms, hands and fingers, ankle and knee problems, depression, and anxiety. AR 82–83, 230. The Commissioner denied his application initially and upon reconsideration. AR 111–15, 117–19. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 120–21. A hearing was held on April 26, 2018. AR 40. After the hearing, the ALJ found that Plaintiff had not been disabled from April 1, 2015, through the date of the decision, July 25, 2018. AR 32. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final of the Commissioner. AR 1–4.

## B. The Sequential Analysis

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter, the ALJ determined that Plaintiff met the insured status

requirement of the Social Security Act through December 31, 2020. AR 15. Thus, for his DIB

claim, Plaintiff must establish disability on or before that date.

At the first step of the disability analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since April 1, 2015, his alleged onset date. *Id*.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and

lumbar spine, inguinal hernia, major depressive disorder and generalized anxiety disorder all

constituted severe impairments, meaning that they more than minimally affected his ability to

perform basic work activities. *Id.* The ALJ found that the other medical conditions discussed in

the medical records or alleged by the Plaintiff were not severe impairments. AR 17–18.

At step three, the ALJ found that Plaintiff did not have an impairment of combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. AR 18–20. The ALJ next assessed Plaintiff's RFC as capable of:

> perform[ing] modified light work as defined in 20 C.F.R. §404.1567(b) except he can only occasionally stoop and climb ramps and stairs and he can never crawl or climb ladders, ropes, and scaffolds. The claimant can occasionally reach overhead with the bilaterally upper extremities. He needs to avoid all exposure to extreme cold, excessive vibrations, and work at unprotected heights. The claimant can perform simple, routine tasks and have only occasional interactions with the public.

AR 20.

At step four, based on that determination and recommendation of the vocational expert ("VE"), the ALJ found that after Plaintiff's alleged onset date of disability, he was no longer capable of performing past relevant work. AR 30. At step five, however, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including small parts assembler (DOT 739.687-030), electronics worker (DOT 726.6877-010), and marker II (DOT 920.687-126). AR 32. Thus, the ALJ ruled that Plaintiff is not disabled. *Id.*

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that he was not disabled. He argues that the ALJ erred in making that determination by: (1) failing to provide clear and convincing reasons to discount Plaintiff's subjective symptom allegations; and (2) improperly evaluating medical opinion evidence, thereby erroneously concluding that Plaintiff retained the ability to work. Each argument will be addressed in turn.

**A.  Plaintiff's Subjective Symptoms Allegations**

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez. v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's

symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, Plaintiff testified that he had problems with his neck and low back and that those impairments limited his ability to sit or stand for long periods of time. AR 43–44, 46, 49–50. Plaintiff also testified that he had problems with his arms and hands, and that they would go numb using the phone. AR 65. He further testified that he had constant headaches, stating that "there is no second that I haven't had a headache in three years." AR 51. Plaintiff also testified that he suffered hernia pains and migraines a couple of times per week. AR 52, 64. In his Function Report, Plaintiff reported that his neck and back hurt all the time, he was unable to stand for more than an hour or two and was unable to lift more than 25 pounds. AR 254. He further reported that when sleeping, he would lose feeling in his arms, fingers and hands and that he would sometimes need help getting dressed due to his back pain. AR 255.

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 23. In applying the second step of the required analysis, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

Plaintiff asserts the ALJ's findings lacked specificity and therefore ran afoul of Ninth Circuit precedent, citing *Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015). ECF 10 at 11. Plaintiff is correct to note that per *Brown-Hunter*, an ALJ is required to specify which testimony he finds not credible and then provide clear and convincing reasons, supported by evidence in the record, to support that determination. *Id*. at 489. The ALJ here—over the course

of five pages and nineteen paragraphs—provided sufficient rationales for rejecting portions of Plaintiff's symptom testimony. AR 24–28. The ALJ's primary two rationales included: (1) Plaintiff's failure to seek and follow through with treatment; and (2) discrepancies between Plaintiff's testimony, his prior statements and other medical evidence.

### 1. Failure to seek and follow through with treatment

A claimant's failure to follow a treatment regimen has been recognized as a clear and convincing reason to question the veracity of symptom allegations. *Burch*, 400 F.3d at 681 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). If a claimant has failed to follow prescribed treatment that might improve symptoms, the ALJ may properly find the alleged intensity and persistence of his symptoms inconsistent with the overall evidence. *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).

In this case, the ALJ noted that despite alleging disabling neck pain and upper extremity symptoms, Plaintiff failed to seek or follow through with treatment for more than six months after his neck surgery. AR 24. The ALJ reasoned that this gap in treatment undermined Plaintiff's allegations that surgery produced only a temporary improvement in his symptoms. *Id.*; s*ee Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (gaps in treatment undermine a claimant's claim about the severity of impairments). In arriving at this determination, the ALJ noted that Plaintiff had surgery in May 2015, and reported resolution of his arm pain, numbness, and paresthesia at his follow up appointment in July 2015. AR 24, 326, 331. At that appointment, Plaintiff's x-rays were noted as "excellent" and his exam did not show any objective neurological deficits. AR 24, 326. His surgeon, Dr. Brett, recommended physical therapy "2-3 times per week over the next 8-10 weeks" and a reassessment in September 2015. AR 24, 326. Instead of following the prescribed physical therapy regimen and returning to Dr. Brett for that post-op visit in September, Plaintiff had two visits with a chiropractor a week apart in August 2015. AR 24, 390. Although Plaintiff testified that he was told by the

chiropractor not to come see him anymore because it "wouldn't do any good," AR 53, the

chiropractor's notes show that Plaintiff's symptoms improved from the first week to the second week

of therapy, and Plaintiff was to "[c]ontinue with . . . therapy and return as needed." AR 390. There is

no evidence Plaintiff sought or received any further treatment until March 2016. AR 24; *see also* AR

427 (as of March 1, 2016 chart note describing Plaintiff as "currently not under active care

treatment").

      Plaintiff objects that he complained of pain at his appointments prior to and after this gap in

treatment, and argues the ALJ did not base his reasoning on inferences reasonably drawn from the

record. ECF 10 at 11–12. But precedent from the Ninth Circuit undermines this assertion. *See, Burch*,

400 F.3d at 681 (affirming ALJ's finding where ALJ noted "[Burch] had not had any treatment for

her back for about *three or four months*" (emphasis added)). Whether Plaintiff complained before or

after his lengthy gap in treatment, the ALJ reasonably found that his failure to follow up with a

doctor for more than six months undermines his allegations that any improvement was very brief. AR

24.

      The ALJ also noted that despite Plaintiff's allegations that he was disabled by neck and back

pain, Plaintiff was not taking any pain medications. AR 27–28. A claimant's use of only over-the-

counter pain medication justifies an ALJ's rejection of subjective complaints. *See Parra v. Astrue*,

481 F.3d 742, 750-51 (9th Cir. 2007) (affirming ALJ because, in part, claimant's "physical ailments

were treated with an over-the-counter pain medication"). The ALJ reasonably found Plaintiff's

failure to take any pain medication undermined his allegations and suggested his symptoms were

generally tolerable with merely over-the-counter medications.

      Plaintiff contends that he was limited to over-the-counter medication because his clinic did

not prescribe medications. ECF 10 at 10; AR 47. Plaintiff's inconsistent statements about seeking

pain medication, however, belied his explanation. *See* AR 26. On March 10, 2016, Plaintiff told a

provider that he was "not interested in focusing on medication management." AR 491. A week later,

PAGE 10 – OPINION AND ORDER

Plaintiff told a different provider he had an appointment with pain management later that month. AR 605. In April 2016, however, he told the agency that he had been referred to a pain management doctor but had not yet scheduled an appointment. AR 284. Thus, while the record confirms that Plaintiff's clinic did not prescribe pain medication, it also shows that Plaintiff repeatedly failed to follow up on referrals for pain medication management.

In addition to having a lengthy gap in treatment following his surgery and then treating his pain symptoms with only over-the-counter medications, Plaintiff also failed to follow through with treatment for his allegedly disabling pain allegations since July 2017. AR 27. Although Plaintiff reported to his provider in July 2017 that he had tried physical therapy two years earlier without any benefit, there is no evidence that Plaintiff engaged in physical therapy since his onset date of April 1, 2015. AR 27, 447. Moreover, when an additional course of physical therapy was recommended to Plaintiff, there is no evidence that Plaintiff engaged in physical therapy nor had any other significant treatment for his back pain since July 2015. AR 27. The ALJ reasoned that Plaintiff's failure to pursue any physical therapy, despite repeated recommendations from his providers to seek out additional treatment, and to take prescription pain medications collectively indicates that his symptoms are not as intolerable as alleged.

Plaintiff objects that the ALJ did not address any of the reasons for the lack of treatment before rejecting his symptom allegations. ECF 10 at 12–13. In his decision, however, the ALJ acknowledged Plaintiff's explanation for failing to seek more aggressive pain management was due to alleged financial limitations. AR 28. The record also shows that Plaintiff declined further procedures, such as surgery, for financial reasons. AR 26, 500. But at the hearing, the ALJ discerned that Plaintiff is fully insured with a 20 percent deductible, and that he has some expendable income. AR 28, 58. It was reasonable for the ALJ conclude that if Plaintiff were as disabled as alleged, he would have used his available resources to obtain necessary treatment. There is no evidence Plaintiff

did so, nor any evidence that, when recommendations for physical therapy were made, he explained any inability to afford it. *See* AR 27, 447.

The ALJ reasonably considered Plaintiff's gap in treatment, failure to follow recommendations to pursue treatment recommendations, failure to treat after 2017, and failure to use prescription pain medication in evaluating his symptom complaints. Accordingly, the ALJ's finding is supported by substantial evidence.

### 2. Discrepancies between Plaintiff's testimony, his prior statements and other medical evidence

Prior inconsistent statements have also been recognized as a clear and convincing reason to reject a claimant's symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1284); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In addition, where it is not the sole reason to discredit a Plaintiff's symptom allegations, inconsistency with the objective medical evidence can constitute a clear and convincing rationale. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ found Plaintiff's symptom complaints inconsistent with findings on examination. AR 25. For instance, Plaintiff testified that he had "absolutely no strength for anything" due to his nerve damage and pain. AR 65. His objective medical findings, however, show no evidence of neurological deficits, loss of muscle strength, weakness, or muscle atrophy consistent with these allegations. AR 25. Apart from Plaintiff's subjective tenderness, subjective range of motion deficits, and some sensory deficits in February 2017, Plaintiff has had essentially normal objective findings on examination with intact gross and fine motor skills, normal sensation, and normal strength and reflexes. AR 25, 490–91, 499–500, 645.

The ALJ also discounted Plaintiff's allegations because Plaintiff made no reports to medical providers of his allegedly debilitating symptoms. An ALJ may reject a claimant's symptom testimony if the claimant "did not report" such symptoms to clinicians. *Greger v. Barnhart*, 464 F.3d

968, 972–73 (9th Cir. 2006). For example, although Plaintiff reported that his symptoms were aggravated by movement, there is no indication he reported difficulty standing for more than a few minutes, difficulty holding his head up, difficulty walking upright at times, difficulty grasping or manipulating objects, or having to lie down for most of the day due to pain. AR 25, 326, 605. Though Plaintiff told the ALJ "there is no second that I haven't had a headache in over three years" AR 51, the record is replete with instances in which Plaintiff expressly denied headaches. AR 26, 341, 453, 461, 469, 638. Likewise, though Plaintiff testified of ongoing hernia pain that occurs a couple of times a week without provocation, AR 52, there is no evidence of ongoing reports of such symptoms; instead, he reported "excellent" pain control. AR 26, 644. The ALJ thus reasonably found Plaintiff's symptom allegations were not reflected in the medical records.

Daily activities can undermine a claimant's credibility if they contradict the claimant's other testimony. 20 C.F.R. § 404.1529(c)(3)(i); *see also Orn*, 495 F.3d at 639; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff testified he spends much of his day sitting or lying down, cannot stand for more than a few minutes, and cannot sit for more than 30 minutes. AR 28, 50, 56, 64. The record shows, however, he went "camping/hunting" with friends for "several day[s]," AR 28, 554, has engaged in physical activities such as using a saw to cut wood, AR 28, 344, went fishing, AR 28, 266, and presided at a wedding, AR 28, 384. These activities are reasonably inconsistent with Plaintiff's allegations that "he has absolutely no strength for anything" and spends the majority of his time lying down. AR 64–65.

Plaintiff objects that he qualified his hunting activities. ECF 10 at 15–16. But an ALJ can reasonably discount a claimant's testimony based on his activities even if he made qualified, equivocal statements regarding his ability to perform those activities. *See Rollins*, 261 F.3d at 857. When, as here, the "evidence reasonably supports either confirming or reversing the ALJ's [credibility] decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ."

*Batson*, 359 F.3d at 1196. Here, while Plaintiff reported when hunting he often just sits on the road alone or stays at camp, he did not allege he spends his time lying down.

In sum, the ALJ gave clear and convincing reasons for discounting Plaintiff's testimony. He identified what testimony was not credible and what evidence undermined Plaintiff's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In light of these reasons, any other errors did not "negate the validity of the ALJ's ultimate conclusion" as to Plaintiff's testimony and were thus harmless. *Batson*, 359 F.3d at 1197. Plaintiff's briefing presents an alternate interpretation of the evidence in the record. But "'[w]here the evidence is susceptible to more than one rational interpretation,' the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (quoting *Andrews*, 53 F.3d at 1039–40).

## B.  Evaluation of Medical Opinion Evidence

The ALJ generally will give more weight to opinions from treating sources because they "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone" or from one-time evaluations performed by consulting physicians. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The longer a treating source has treated claimant and the more times claimant has been seen by the treating source, the more weight will be given to that source's medical opinion. 20 C.F.R. § 404.1527(c)(2)(i). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830.

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting the medical opinions of Dr. Brett, Plaintiff's surgeon. ECF 10 at 6. Plaintiff was referred to Dr. Brett for a neurosurgical consultation after suffering back and neck pain which interfered with his work, and he was treated by Dr. Brett for approximately three months from April to July 2015. AR 326–28.

At his initial consultation with Dr. Brett in April 2015, Plaintiff agreed to be scheduled for C6-C7 anterior cervical arthroplasty. AR 329. Prior to Plaintiff's surgery in May 2015, Dr. Brett wrote a letter to Plaintiff's chiropractor dated April 14, 2015, stating Plaintiff could work in light-duty, but "should not lift or carry more than 25 lbs., perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions that aggravate his pain." AR 327. After surgery, on July 20, 2015, Dr. Brett wrote again to Plaintiff's chiropractor, reporting positively on the surgery, restating the same functional restrictions, and noting that Plaintiff "will be reassessed here in September when I hope to perform a closing examination and return him to his regular occupation." AR 326. Plaintiff's regular occupation was a warehouse worker which required Plaintiff to frequently lift 25 pounds and at times to lift 100 pounds or more. AR 240, 242.

Plaintiff contends that the ALJ erred in failing to give the limitations in Dr. Brett's opinions great weight. ECF 10 at 5. The ALJ assigned minimal and partial weight, respectively, to Dr. Brett's opinions, finding that they did not intend to profess permanent functional limitations for Plaintiff. AR 29.

Specifically, as to Dr. Brett's first opinion dated April 14, 2015, one reason the ALJ gave it minimal weight is that he mistakenly believed the opinion predated Plaintiff's alleged disability onset date of April 1, 2015. *Id.* Though the ALJ misstated and misapplied the alleged onset date, any error here is harmless because the ALJ provided another reason to discount the April 2015 opinion. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (an error in an ALJ's reasoning to discount evidence is not automatically harmful where other reasons remain supported by substantial evidence). The other reason the ALJ discounted Dr. Brett's April 2015 opinion was based on its temporal scope: it was "provided prior to [Plaintiff's] surgery" and therefore it was of limited value in assessing Plaintiff's functioning after his surgery was performed. AR 29. Dr. Brett anticipated curative results: his April 2015 letter states that Plaintiff's prognosis with surgery "is

excellent," and his assessed limitations are only applicable "in the interim" until surgery. AR 327.

Thus, Dr. Brett's letter confirms the ALJ's reasoning that the restrictions referenced in the April 2015

letter were only intended to be applicable for a limited duration and only prior to surgery. This was a

clear and convincing reason for the ALJ to assign minimal weight to Dr. Brett's April 2015 opinion.

    As for Dr. Brett's July 2015 opinion, the ALJ assigned it partial weight because it was given

less than two months after surgery and it also contained temporary restrictions. AR 29. An ALJ may

discount an opinion that reflects only temporary limitations because disability requires twelve

months of inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

§ 404.1509; *see Carmickle*, 533 F.3d at 1165. The wording of Dr. Brett's July 2015 letter assessing

limitations, AR 326, confirms the ALJ's reasoning. After restating the functional restrictions that he

had listed pre-surgery which limited Plaintiff to light work, Dr. Brett noted that Plaintiff "will be

reassessed" two months later and at that time, he "hope[d] to perform a closing examination and

return him to his regular occupation." *Id.* The ALJ found Dr. Brett's functional limitations were an

interim measure meant only to apply to a recovery period, as Dr. Brett anticipated that in two

months' time, Plaintiff would be able to return to his occupation which required much heavier lifting.

AR 75, 240, 242. The record contains no evidence showing that Plaintiff returned to Dr. Brett for that

September visit. AR 29. The ALJ thus gave a clear and convincing reason that Dr. Brett's opinion

was only partially credited: because it was not intended to be a final assessment on Plaintiff's post-op

functioning. *Id.*

    Plaintiff contends that the ALJ's finding that the limitations assessed by Dr. Brett were

temporary was not a clear and convincing reason when considered in the light of the entire record,

including the subsequent treatment Plaintiff underwent. ECF 10 at 7. The ALJ, however, did not limit

his findings to the three-month timeframe surrounding Plaintiff's surgery. The ALJ supported his

decision to discount Dr. Brett's opinions by noting that in the two years after his surgery, Plaintiff did

not report any limitations in his ability to perform repetitive movements with his upper extremities to

PAGE 16 – OPINION AND ORDER

any medical provider, including any problems with movements that required frequently lifting only ten pounds per the "light work" designation in Plaintiff's RFC. AR 29.

Furthermore, although Dr. Brett's 2015 opinions also assessed a limitation against awkward or stationary neck positions, the ALJ noted the dearth of Plaintiff's post-surgery reports to medical providers regarding any difficulties with maintaining his neck position. AR. 29, 487. By including a frequency limitation in Plaintiff's RFC for reaching overhead with bilateral extremities, however, the ALJ incorporated more restrictive limitations than the opinions of the two Disability Determination Services reviewing physicians Neal Berner, M.D., and Susan Moner, M.D. AR 90–91, 103–04. The ALJ thus determined that any limitation in neck position was generally accounted for by the RFC's limitations in overhead work.

The ALJ's discounting of Dr. Brett's opinion is supported by substantial evidence and was based on a permissible determination within the ALJ's province. Though Plaintiff may disagree with the ALJ's evaluation of the opinion evidence, it is supported by substantial evidence in the record and this Court does not have the discretion to second-guess it. *Batson,* 359 F.3d at 1193 (when evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the reasonable interpretation of the ALJ).

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 5th day of August, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge